FILED

10/06/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: AF 11-0244

IN THE SUPREME COURT OF THE STATE OF MONTANA

AF 11-0244

FILED

OCT 06 2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN RE THE RULES FOR ADMISSION
TO THE BAR OF MONTANA

ORDER

In July 2017, this Court adopted temporary amendments to Rule 104 of the Montana Board of Bar Examiners' Rules as an interim means to accommodate examinees who are breastfeeding. We invited comments on the amendments and received several. The Court extends its thanks to the Board of Bar Examiners for its review of the issue and to all those who took the time to offer input on the proposal.

After review and consideration of the comments to the temporary amendments, at a public meeting on October 3, 2017, the Court determined that minor changes to the interim rule are in order.

IT IS NOW ORDERED that the attached Montana Board of Bar Examiners' Rules, including a new subsection F to Rule 104, are ADOPTED, effective immediately.

A copy of this Order and the attached rule shall be posted on the Court's website. In addition, the Clerk is directed to provide copies of this Order and attachment to the Executive Director and the Bar Admissions administrator of the State Bar of Montana with the request that they be posted on the State Bar's website; to the Chair of the Board of Bar Examiners; to Dean Paul Kirgis of the Alexander Blewett III School of Law; to the State Law Library; to Todd Everts, Connie Dixon, and Molly Peterson at Montana Legislative Services Division; to Helene Haapala and Scott Moe at Thomson Reuters; and to Robert Roy and Patti Glueckert at LexisNexis.

Dated this 7 day of October, 2017.

Chief Justice

# MONTANA SUPREME COURT BOARD OF BAR EXAMINERS' RULES

## Rule 101 – Board of Bar Examiners.

**A.** **Contact with Board of Bar Examiners.** All correspondence or other communications to the members of the Board of Bar Examiners must be directed to the Bar Admissions Administrator, State Bar of Montana, P.O. Box 577, Helena, MT 59624, phone (406) 442-7660. Applicants may not contact Board members directly, unless given prior approval by the Bar Admissions Administrator.

**B.** **Public Request.** Upon request, the Bar Admissions Administrator or the Administrator's designee may confirm that an individual has filed an application for admission to the State Bar of Montana.

## Rule 102 – Bar Examination Content, Certification, and Dates.

**A.** **Examination Composition.** The Uniform Bar Examination is prepared and coordinated by the National Conference of Bar Examiners and comprises the Multistate Essay Examination (MEE), two Multistate Performance Test tasks (MPT), and the Multistate Bar Examination (MBE). It is uniformly administered, graded, and scored by user jurisdictions and results in a portable score subject to individual jurisdiction admission requirements. Applicants must sit for all components in the same administration to earn a Uniform Bar Examination score. Scores from any one component of the Uniform Bar Examination may not be carried forward to any subsequent examination. An applicant must sit for all components of the Uniform Bar Examination in the same administration to gain admission to the State Bar of Montana.

**B.** **Certification.** An applicant may not sit for the Montana Uniform Bar Examination unless the applicant has been duly certified or conditionally certified by the Commission on Character and Fitness.

**C.** **Dates of Examination.** The Uniform Bar Examination is administered over two days. The MBE is given annually on the last Wednesdays of February and July, and the MEE and MPT are given on the preceding Tuesdays. Unless otherwise directed by the Board, the February examinations are administered in Helena, Montana, and the July examinations are administered in Missoula, Montana. The examination facility is determined by the Board.

**D.** **Montana Law Seminar.** All applicants must attend a Montana Law Seminar (MLS) as a prerequisite to admission to the State Bar of Montana. The seminar is

1

held twice annually on the Thursday immediately following the administration of the Uniform Bar Examination or other date directed by the Board.

The Board may establish a two-track approach to the MLS with all applicants taking the same course in one session and splitting the other session into litigation and commercial/transactional tracks. Limited portions of the MLS may be by video, recorded, or live via video link.

## Rule 103 – Examination, Administration, and Grading.

A. **Attendance at Examination.** An applicant may not be admitted to a Uniform Bar Examination session more than one-half hour after the session begins. An applicant who is admitted after an examination session begins may not receive extra time and the examination session will conclude as scheduled.

B. **MEE and MPT Grading.** Each examination paper produced by an applicant on the MEE and MPT is separately graded. Examination papers are graded and credited by applicant number and not by applicant name.

C. **Score Combining.** MBE answer sheets are scanned and centrally scored by the National Conference of Bar Examiners. MEE and MPT answers are graded on a scale of zero to six, with six being the highest qualifying score and zero being the lowest possible score. All scores are converted to the 400 Uniform Bar Examination point scale and combined with the MBE scaled scores. MEE and MPT scores are scaled to the MBE, with the MBE weighted 50%, the MEE 30%, and the MPT 20%.

An applicant with a combined scaled score of 266 or higher will be deemed to have passed the Montana Uniform Bar Examination.

D. **Disruption During Examination.** Should a serious disruption occur during any portion of a Uniform Bar Examination session, the Bar Admissions Administrator or proctors must record the incident on the proctor and irregularity report forms and the Board will be notified. If examination time is lost by the general examination population due to the disruption, a corresponding amount of time will be added to the end of the same examination session, if reasonably feasible.

E. **Individual Emergencies During Examination.** If during the course of Uniform Bar Examination administration an applicant has a sudden and unexpected emergency not of the applicant's making and the Bar Admissions Administrator has approved the applicant's departure or other inability to complete the examination, the departure will be treated as a deferral and the fees will transfer to

the next examination. The Bar Admissions Administrator will record the incident on the proctor and irregularity report forms and the Board will be notified.

## Rule 104 – Testing Accommodations.

**A.**    **Application Deadline for Testing Accommodations.** An applicant who claims a disability and who seeks an accommodation to sit for the Uniform Bar Examination shall submit a request for the accommodation with supporting evidence by the application filing deadline for the relevant Uniform Bar Examination administration unless the disability occurs between the application filing deadline and the relevant Uniform Bar Examination administration.

**B.**    **Consideration of Testing Accommodation Requests.** Requests for testing accommodation are considered on a case-by-case basis. To qualify for accommodation, the requesting applicant must submit evidence sufficient to satisfy the Board or its designee that:

1.    the applicant is otherwise qualified to sit for the Uniform Bar Examination;
2.    the applicant suffers from a disability;
3.    the disability limits the applicant's ability to demonstrate, under standard testing conditions, that the applicant possesses the knowledge, skills, and abilities tested on the Uniform Bar Examination;
4.    the disability is permanent or long-term;
5.    the disability has a current substantial impact on the applicant. A mere submission of a medical diagnosis of impairment is insufficient to qualify the applicant for accommodation; and
6.    the requested accommodation must address only a disability the law recognizes and must be tailored to address the disability as it relates to the Uniform Bar Examination testing conditions. The requested accommodation may not give the applicant an advantage over other applicants, but must permit the applicant to perform "on a level playing field" with other applicants.

Requests for accommodations will be considered by the Board or its designee based on the information submitted by the applicant and other information as may be reasonably available to the Board. Taking into account the resources available to it, the Board may, but is not required to, seek the assistance of experts on the particular request for accommodation.

The Board may require the applicant to provide additional information relating to the claimed physical or mental impairment and prior testing accommodations received, and may require the applicant to submit to examination by a qualified professional designated by the Board in connection with the applicant's requested testing accommodation.

**C.** **Appeal of Board Decision.** The Board's decision on whether to grant the requested accommodation or to offer an alternative accommodation is final. An applicant may petition for relief from the Board's decision by petitioning the Montana Supreme Court.

**D.** **Subsequent Accommodation Requests.**

Applicants who retake the Uniform Bar Examination shall submit "Form 1: Applicant Request for Test Accommodations" each time they apply for the Uniform Bar Examination, even if they previously requested and were granted accommodations by the Board. It is not necessary to resubmit supporting evidence that was submitted with a previous request if the applicant sat for the Uniform Bar Examination within the preceding three years and:

(1) is requesting the same accommodation that was previously granted; and

(2) has had no material changes in the physical or mental impairment for which the previous accommodation was granted. New supporting evidence is required if there is any change in the requested accommodation. An update to prior medical evidence assessing the applicant's current functional limitations and ongoing need for accommodation is required if the nature of the applicant's impairment changes. The Board may require an update to prior evidence in all cases in which it determines that the prior evidence is insufficient to establish the applicant's current level of impairment and need for accommodation.

**E.** **Definitions.**

1. "Accommodation" means an adjustment to or modification of the Uniform Bar Examination testing conditions that addresses the functional limitations related to the applicant's disability without:

   a.    fundamentally altering the nature of the Uniform Bar Examination or the Board's ability to determine through examination whether the applicant possesses the necessary knowledge, skills, and abilities to pass the Uniform Bar Examination;

   b.    imposing an undue burden on the Board;

   c.    compromising the security of the Uniform Bar Examination; or

   d.    compromising the validity of the Uniform Bar Examination.

2. "Disability" means a disability under the Americans with Disabilities Act of 1990 (ADA), which defines a person with a disability as a person with a

physical or mental impairment that substantially limits one or more major life activity that is of central importance to daily life.

3.  "Qualified professional" means a licensed physician, psychiatrist, or other health care provider who has comprehensive training in the field related to the applicant's disability.

4.  "Substantially limits one or more major life activity" means the physical or mental impairment prevents or severely restricts the applicant from performing or engaging in activities that are of central importance to most persons' daily lives.

F.  **Breastfeeding-Related Requests.** Although breastfeeding is not a disability as defined above, and is not to be considered one for purposes of granting accommodations, the Board will afford breastfeeding applicants accommodations in a manner consistent with public policy and law. Any breastfeeding applicant seeking such an accommodation shall submit a letter request for breastfeeding accommodation to the Bar Admissions Administrator by the filing deadline for the relevant Uniform Bar Examination administration stating the type of accommodation desired. The applicant need not submit the request for breastfeeding accommodations on the form otherwise required for a disability-based accommodation. A doctor's statement need not be submitted with the request but may be asked for by the Board at a later date. The request for breastfeeding accommodations should include documentation of the child's date or expected date of birth. Individual accommodations may vary, in the Board's discretion, depending upon each applicant's request or circumstances and whether such accommodations are medically necessary for the health of the applicant or the infant. The types of accommodations that may be granted by the Board include but are not limited to the following, depending on each individual applicant's circumstances:

1.  Permission to bring to the exam and store at the testing site necessary medical equipment and supplies, including a breast pump, storage supplies and a cooler;

2.  A private or semi-private location with an electrical outlet, if requested, to breastfeed or express breast milk. A semi-private location is defined as one that is located away from other applicants, except other applicants who are also breastfeeding or expressing milk.

3.  Stop-the-clock breaks during each three-hour testing period to be used soley for the purpose of breastfeeding the infant or breast pumping, if

existing breaks are insufficiently frequent for an individual's circumstances.

The Board's decision on whether to grant the requested accommodation or to offer an alternative accommodation is final. An applicant may petition for relief from the Board's decision by petitioning the Montana Supreme Court.


## Rule 105 – Rules of Conduct.

A. **Examination Rules of Conduct.** An applicant shall abide by all rules and instructions governing the administration of all portions of the Uniform Bar Examination. An applicant MAY NOT:

1. falsify the application or proofs required for admission to the Uniform Bar Examination;

2. utilize any unauthorized notes, books, recordings, electronically retrievable data, or other unauthorized materials while taking the examination. The only items permitted in the examination room are those that have been approved by the Board: (a) computers specifically configured for use of computer-based testing, such as Exam Soft; or (b) blue books issued by the test proctors and approved writing tools. Any item that may provide the applicant with information or access to information other than the applicant's own knowledge is prohibited, including but not limited to notes, cell phones, backpacks, purses, wallets, cameras, electronic or wireless devices, or timing devices. The Board may prohibit any item not specifically referenced at any time, including at the examination session. Possession of a prohibited item in the examination may be treated as a cheating incident, and examination proctors are authorized to confiscate any unauthorized item.

3. use answers or information from other applicants while taking the examination;

4. provide answers or information to other applicants taking the examination;

5. read questions on the examination prior to the announcement to begin the examination;

6. continue to answer any question after the announcement to stop when the session has ended;

7. remove any multiple-choice, machine-scored examination question from the examination room, or otherwise communicate the substance of any of those questions to others, including applicants or persons who are employed by or associated with bar review courses;

8. remove any essay questions, scrap paper, or other materials from the examination room, or otherwise communicate the substance of any of those questions to others, including applicants or persons who are employed by or associated with bar review courses;

9. compromise the security or the integrity of the Uniform Bar Examination; or

10. disregard any instruction given by the Bar Admissions Administrator during the course of the examination or cause generalized disruption of the examination.

**B.** It is the Board's policy that the Uniform Bar Examination administration and related conduct of a Montana Bar applicant be beyond reproach. Applicants are at all times to maintain a professional attitude toward other applicants, proctors, and other examination personnel. Conduct that constitutes a violation of these Rules, the Rules for Admission, or any rules or instructions provided by examination personnel may result in immediate disqualification to sit for and in ejection from the examination. Cheating or taking any action that disrupts or compromises the security or integrity of the Uniform Bar Examination may result in immediate disqualification to sit for and in ejection from the examination.

## Rule 106 – Impoundment, Investigation, and Appeal.

**A.** **Impoundment of Examination Results.** If the Board or the Bar Admissions Administrator has cause to believe an applicant has violated any of the rules of conduct set forth above, the applicant's bar examination papers and results may be impounded pending investigation by the Board.

**B. Investigation by the Board of Bar Examiners Subcommittee.**

1. The Bar Admissions Administrator shall refer any concern regarding violation of the Rules of Conduct to a subcommittee of two members of the Board for further investigation. In such investigation, the Bar Admissions Administrator or the subcommittee may obtain information that relates to the applicant's conduct, administer oaths and affirmations, and compel by subpoena the attendance of witnesses and the production of books, papers, and documents. The subcommittee may require sworn taped interviews with an applicant to clarify information or to facilitate the investigation.

2. If it appears to the subcommittee that there is credible evidence that would establish an applicant's violation of any rule of conduct, the Bar Admissions Administrator shall serve written notice on the applicant by certified mail stating with particularity the facts upon which the alleged violation is based.

3. The applicant shall file a verified answer with the Bar Admissions Administrator within thirty days of service of the notice. The answer must identify with specificity the alleged violations disputed by the applicant and set forth any evidence that can contradict the charges. The applicant may request a hearing before the Board of Bar Examiners. The applicant shall supply an original and seven copies of all materials to the Board's office.

4. In the event the applicant does not submit a written answer as provided in Rule 106 B.3., the Board shall deem the facts set forth in the written charges to be established. The charges shall become part of a permanent file of the Commission on Character and Fitness. The applicant may not reapply for admission for at least three years from the date the Board confirms the violation.

5. If an applicant files an answer but does not request a hearing, the Board Chair shall appoint a committee made up of Board members other than the two members assigned to investigate the claimed violation. The committee must consist of no fewer than three and no more than 5 members. If there is an insufficient number of Board members available for appointment, the Chair may appoint a member of the State Bar of Montana in good standing to sit as a member of the committee. The committee shall review the evidence gathered by the Bar Admissions Administrator, the two-member subcommittee, together with the submission received from the applicant, and render a final decision by a majority vote of its members.

## C. Hearing.

1. If the applicant requests a hearing, the hearing panel must consist of a majority of the members of the Board who did not serve on the subcommittee appointed by the Bar Admissions Administrator. A majority of the hearing panel shall make the final decision.

2. The Board shall notify the applicant in writing of the date, time, and place of the hearing and of the applicant's right to be represented by counsel at the hearing, to examine and cross-examine witnesses, and to present evidence.

3. The applicant shall supply a list of witnesses, including addresses and phone numbers, and all supporting documentation including any evidence, affidavits, and exhibits the applicant determines are necessary to support the applicant's position at least ten days prior to the hearing. The applicant shall supply an original and seven (7) copies of all materials to the Board's office.

4. The hearings before the Board must be open to the public unless the applicant requests that they be private and the panel chair finds that the demands of the applicant's individual privacy clearly exceed the merits of public disclosure and rules that the hearing be closed.

5. The Rules of Evidence need not be observed. The Board may take evidence in other than testimonial form and rely upon records and other materials furnished to the Board in response to its investigation. The Board may determine whether evidence to be taken in testimonial form will be taken in person at the hearing or upon deposition, but in either event all testimonial evidence must be taken under oath. The Board shall maintain a complete record of the hearing.

6. The hearing panel shall determine by a preponderence of the evidence whether the applicant violated the examination rules of conduct.

## D. Findings and Decision.

1. The Board shall issue a written decision which shall be served upon the applicant by certified mail and reported to the Commission on Character and Fitness.

2. In its decision the Board may take one or more of the following actions:

   a. void the results of the examination taken;

b.     transmit a written report of the matter to bar admission authorities in any jurisdiction;

c.     take such other action as the Board deems appropriate.

## E.    Supreme Court Review.

1.     The final decision of the Board is conclusive unless a verified Petition for Review is filed by the applicant with the Montana Supreme Court within thirty days following service of the decision upon the applicant. The record of the hearing before the Board must be transcribed at the applicant's expense and provided to the Court. A copy of the Petition for Review and the hearing transcript must also be served upon the Board.

2.     Within thirty days of receipt of the Petition, the Board shall transmit the entire record to the Clerk of the Supreme Court with a response to the Petition fully advising the Court as to the Board's reasons for its decision, and admitting or contesting any assertions made by the applicant in the Petition.